IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                Case No.  12-10076-JWB

DEXTER BAKER,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. 84.)  The motion has been fully briefed and is ripe for decision.  (Docs. 86, 87, 90.)  For the reasons provided herein, Defendant's motion is DENIED.

**I.    Facts and Procedural History**

On August 20, 2012, Defendant entered a guilty plea to one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).  (Doc. 12.)  The presentence report ("PSR") was filed on October 25, 2012.  Defendant's criminal history category was a VI based on his criminal history score of 27, which included two points for committing the instant offense while under a criminal justice sentence in other cases.  (Doc. 13 at 24-25.)  Defendant's total offense level was calculated as 29 after adding four points because of Defendant's status as a career offender.  (*Id.* at 9-10.)  Notably, two points had been added to the calculation because Defendant possessed two firearms in the residence where the cocaine and crack cocaine were present.  (*Id.* at 9.)  Defendant's career offender status was the result of two prior convictions of possession with intent to sell (marijuana and cocaine) and one conviction of aggravated battery.  Based on

1

Defendant's total offense level and criminal history category, the calculated sentencing guideline range was 151-188 months.

On October 26, 2012, the Honorable Monti L. Belot notified Defendant that he was contemplating an upward variance from the calculated guideline range. (Doc. 14.) The sentencing judge stated that this decision was based on Defendant's criminal history, which included several felony convictions involving drugs, several misdemeanor convictions, and numerous arrests for domestic violence and other contacts with authorities. Notably, the court was "unable to understand how a person with a criminal record like defendant's can score only 27 criminal history points." *Id.* The presentence report, in the view of the judge, described an individual who was a "drug dealer who possesses weapons, who clearly has never respected the law and who presents a clear danger to the public." *Id.* On November 19, 2012, Defendant was sentenced to 200 months, which was an upward variance from the high end of the guideline range.

Defendant appealed his sentence. The Tenth Circuit Court of Appeals affirmed. *United States v. Baker*, 543 F. App'x 746, 747 (10th Cir. 2013). Relevant to the instant motion, Defendant filed an emergency motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A) on January 4, 2021. (Doc. 78.) In that motion, Defendant argued that his health conditions and the COVID-19 pandemic were extraordinary and compelling circumstances that warranted a reduction in sentence. Defendant further argued that his prior convictions would not have qualified him as a career offender if he was sentenced today. The court denied the motion finding that his health conditions did not establish an extraordinary and compelling reason justifying release because Defendant had already contracted COVID-19 and he was able to recover adequately under the prison's care. (Doc. 83 at 5-7.) The court further determined that Defendant's arguments regarding his sentence were previously raised in a prior 28 U.S.C. § 2255 motion and that

Defendant must first seek authorization to file a second or successive § 2255 motion to raise this argument. (*Id.* at 6-7.)

Defendant has now renewed his motion for compassionate release on the basis that he has various health conditions and his sentence would be less if he was sentenced today. (Doc. 84.) Defendant has several underlying medical conditions, including diabetes, obesity, and hypertension. Defendant argues that these conditions place him at increased risk should he contract COVID-19 again. Defendant asserts that his medical conditions, rehabilitation efforts while incarcerated, and the change in law regarding his career offender status support a finding of extraordinary and compelling reasons to justify a reduction to time served.

The government objects to the relief requested by Defendant, arguing that a sentence to time served would not be appropriate after consideration of the sentencing factors. With respect to Defendant's argument regarding his career offender designation, the government asserts that the court should deny consideration on the grounds stated by Judge Marten. (Doc. 86 at 8-9.) In a decision that was issued after Judge Marten's ruling, however, the Tenth Circuit has instructed that a "career offender designation can and should be reviewed as part of a First Step Act motion." *United States v. Warren*, 22 F.4th 917, 929 (10th Cir. 2022) (citing *United States v. Crooks*, 997 F.3d 1273, 1278 (10th Cir. 2021)). Therefore, the court must consider Defendant's argument.

At the time Defendant was sentenced, his prior drug convictions qualified as controlled substance offenses for purposes of the career offender enhancement. The Tenth Circuit has since held that those convictions do not qualify as controlled substance offenses for purposes of the enhancement because the Kansas statute is broader than the conduct criminalized under § 4B1.2(a). *United States v. Madkins*, 866 F.3d 1136, 1147-48 (10th Cir. 2017). Therefore, Defendant would not be classified as a career offender if he was sentenced today.

Defendant has been incarcerated since June 27, 2012. He has served approximately 116 months of his 200 month sentence. Because Defendant would not be subject to the career offender enhancement, his advisory guideline sentence calculation would be 110 to 137 months.[1] Based on this calculation, Defendant has already served a sentence at the low end of a recalculated advisory guideline range. The court will consider the change in Defendant's career offender designation and the recalculated range in evaluating Defendant's motion for release as discussed herein.

District of Kansas Standing Order 19-1 appoints the Federal Public Defender ("FPD") to represent indigent defendants who may qualify to seek compassionate release under § 603 of the First Step Act. Administrative Order 20-8 supplements 19-1 and sets forth procedures to address compassionate release motions brought on grounds related to the COVID-19 pandemic. Under 20-8, the FPD has fifteen days to notify the court whether it intends to enter an appearance on behalf of any pro se individual filing a compassionate release motion based on COVID. Here, the FPD notified the court that it did not intend to enter an appearance to represent Defendant.

**II.     Standard**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [that] rule of finality is subject to a few narrow exceptions." *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). One exception is found in the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A)(i), which allows a reduction when certain conditions are met including "extraordinary and compelling reasons warrant such a reduction…." Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a reduction. *McGee*, 992 F.3d at

---

[1] Defendant's revised total offense level would be 25 and his criminal history category would remain a VI based on his criminal history. Defendant's prior counsel also calculated the same range after eliminating the 4-level enhancement. (Doc. 82 at 8.)

1041. The First Step Act changed this to allow a defendant to file his own motion for reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Mata-Soto*, No. 20-3223, 2021 WL 3520599, at *1 (10th Cir. Aug. 11, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Tenth Circuit has endorsed a three-step test for district courts to use in deciding motions filed under § 3582(c)(1)(A). *McGee*, 992 F.3d at 1042 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if Defendant has administratively exhausted his claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. A court may deny the motion when any of the three requirements is lacking and the court need not address the other requirements. *Id*. at 1043. But all requirements must be addressed when the court grants a motion for release under the statute. *Id*. With respect to the second requirement, the applicable policy statements, the Tenth Circuit has held that the current policy statement on extraordinary circumstances is not applicable to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021); *United States v. Vargas*, No. 13-10193-JWB, 2021 WL 4623586, at *1 (D. Kan. Oct. 7, 2021).

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed training, care, or treatment in the most

5

effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing range established for the offense at the time of sentencing, (5) any pertinent policy statement in effect at the time of the defendant's sentencing, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id*. § 3553(a)(1)-(7); *see also United States v. Cash*, No. 21-7027, 2021 WL 4911068, at *2 (10th Cir. Oct. 21, 2021).

Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537 (D. Kan. Aug. 24, 2020); *United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at *2 (D. Kan. Nov. 4, 2020).

### III. Analysis

Initially, Defendant cites to a letter indicating he exhausted BOP remedies on his motion. (Doc. 84-1.) The government does not contest the showing. (Doc. 86 at 4.) Accordingly, the court finds Defendant has exhausted his administrative remedies.

At the outset, the court recognizes its discretionary authority, on an individualized basis, to consider whether changes in the law since the time of sentencing, in conjunction with other circumstances, amount to extraordinary and compelling reasons for a sentence reduction. This conclusion follows from *McGee* and *Maumau*. For purposes of the instant motion, it appears undisputed that a person sentenced today for the same offense Defendant committed would be facing an advisory guideline range (maximum) of approximately 134 months, below the 200 month sentence imposed on Defendant. Previously, Defendant's high end guideline range was 188 months. In sentencing Defendant to 200 months, the sentencing judge varied upward.

Notwithstanding the foregoing, the court's consideration of the § 3553(a) factors leads it to conclude Defendant's motion for sentence reduction should be denied. One of the § 3553(a) factors examines the nature and circumstances of the offense and the history and characteristics of the defendant. On this point the record and the PSR show that, prior to his incarceration on this sentence, Defendant engaged in repeated criminal conduct since the age of nineteen. For example, according to the PSR, in January 2000, Defendant was convicted of possession of cocaine with the intent to sell. Defendant was sentenced to 14 months and placed on 36 months' probation. (Doc. 13 at 12.) Shortly thereafter, Defendant was arrested on a probation violation and his probation was revoked. According to the PSR, Defendant had multiple disciplinary violations while in custody. In May 2000, Defendant was convicted of aggravated battery and sentenced to 38 months but placed on probation. Defendant's probation was revoked and he was sentenced to serve the remainder of his sentence to run concurrent to his January 2000 conviction. (*Id.* at 14-15.) In 2006, Defendant was convicted of resisting arrest. Defendant had refused to comply with officers' directives to get on the ground, came off the porch directly in front of an officer with his fists clenched, and attempted to cock his arm back. Defendant was sprayed with pepper spray and still continued to struggle with officers. He was sentenced to six months. (*Id.* at 16.) In May 2007, Defendant was convicted of possession of cocaine. He was sentenced to 11 months and placed on 18 months' probation. Defendant's probation was then revoked and he was sentenced to 28 months. Defendant's probation was revoked twice in that case for committing other state crimes. (*Id.* at 19.) Defendant was on parole supervision for this state conviction when he committed the offense in this case. (*Id.* at 18.) In March 2008, Defendant was convicted of possession of marijuana with intent to sell. He was sentenced to 40 months but placed on probation. His probation was revoked and he was ordered to serve his original sentence. (*Id*. at 22.) Defendant

was again convicted of resisting arrest in early 2012. In that case, officers were executing an arrest warrant for Defendant as he had absconded from state authorities. (*Id.* at 24.) The PSR shows several other convictions prior to the charges in this case.

In this case, on March 17, 2012, a search warrant was executed at a residence and Defendant was present inside. Defendant was the target of the search warrant. The officers seized two firearms, ammunition, cocaine, crack cocaine, and multiple digital scales, and packaging materials. (*Id.* at 6-7.) The grand jury returned an indictment charging Defendant with possession with intent to distribute cocaine in violation of 18 U.S.C. § 841(a)(1), along with charges of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g) and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924 (c). (Doc. 1.) Defendant pleaded guilty to one count of possession with intent to distribute cocaine.

Defendant acknowledges his criminal conduct in this case and his criminal history. But, Defendant argues that his medical conditions, the COVID-19 pandemic, his behavior while incarcerated, and the fact that he would be subject to a lesser advisory guideline range if he was to be sentenced today all support a sentence reduction to time served. The government argues that the sentencing factors do not support such a reduction.

Defendant's conduct before being incarcerated on the instant offense already showed a pattern of engaging in repeated criminal conduct. It is also clear that Defendant was undeterred from criminal conduct by previous stints in prison. After considering the nature of the offenses and Defendant's history and characteristics, the court concludes that they weigh strongly against any reduction in sentence.

Other § 3553(a) factors include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The instant offense was

extremely serious in nature. An examination of the evidence shows that Defendant was engaging in drug trafficking and had firearms in the residence where he was packaging the drugs. This was not the first time Defendant was charged with possession with intent to distribute. Rather, his criminal history makes clear that Defendant has been engaged in drug dealing for years. Prior episodes of incarceration apparently did nothing to curb Defendant's propensity to engage in drug trafficking. Moreover, Defendant's criminal history shows that his probation and parole have been repeatedly revoked during his prior criminal sentences. This shows that he has no respect for the law and does not comply with conditions that are placed on him by the courts. The 200 month sentence imposed in this case is consistent with the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The sentence imposed may tend to further the interest in deterring others from engaging in such behavior, and it will clearly protect the public from any further crimes committed by Defendant.

The court has considered the other § 3553(a) factors as well. The fact that the sentencing guideline range applied to Defendant would not apply to a person committing a similar offense today merits serious consideration, but on balance it does not outweigh Defendant's demonstrated propensity to deal drugs despite prior criminal justice sentences and periods of incarceration. Moreover, in this case, Defendant possessed firearms in the residence which was presumably used for drug trafficking. Defendant's asserted attempts at rehabilitation have also been considered by the court. Defendant argues that he has completed several courses and is gainfully employed. The court has reviewed the records. Based upon those records, it appears that his education is quite minimal given that he has been incarcerated for almost ten years. (Doc. 84-4.) And, although Defendant has been an exceptional employee according to his supervisor, Defendant has only been employed since August 2021. (Doc. 87.) While the court commends Defendant's employment

and the educational programs he has completed, it is not persuaded that there are extraordinary and compelling reasons for a sentence reduction.

The court has also considered Defendant's health conditions and the current COVID-19 pandemic. While the court acknowledges that Defendant has several health conditions, there is no indication that the prison is not providing for his health care needs. Rather, the medical records show that he has consistently been provided with medical care. (Doc. 84-3.) With respect to the ongoing pandemic, BOP has also undertaken "extensive and professional efforts to curtail the virus's spread," *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), and Defendant has not shown that compared to release in the community at large, he "faces a heightened or imminent risk of exposure to COVID-19" while incarcerated at Forrest City. *United States v. Young*, No. CR 10-20076-01-KHV, 2021 WL 1999147, at *3 (D. Kan. May 19, 2021). The risk that COVID-19 or a variant resistant to the vaccine may emerge at Forrest City cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Id.* (quoting *Raia*, 954 F.3d at 597). While the court is sympathetic to Defendant's concerns regarding COVID-19 given Defendant's health conditions, the court is not persuaded that these reasons warrant a sentence reduction.

The sentencing judge, in varying upward from the guideline range, recognized that under the circumstances, the overriding concern in light of Defendant's extensive history was the need to impose a sentence that would protect the public from further crimes by Defendant, promote respect for the law, and provide just punishment. (Doc. 14.) Those concerns remain, even with the passage of time. The court finds that the imposed sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense.

After considering the factors enumerated in § 3553(a), Defendant's motion to reduce his sentence to time served is denied.

## IV. Conclusion

Defendant's motion for reduction of sentence (Doc. 84) is DENIED.

IT IS SO ORDERED.  Dated this 8th day of March 2022.

                                                      _s/ John W. Broomes_\
                                                     JOHN W. BROOMES\
                                                     UNITED STATES DISTRICT JUDGE